**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

RANDALL LEE FIELDS,

        Petitioner,                    Case No. 06-10708
                                                       Honorable Nancy G. Edmunds

v.

CAROL HOWES,

        Respondent.
_____/

**OPINION AND ORDER DENYING
PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner, Randall Lee Fields, a state inmate currently incarcerated at the Lakeland Correctional Facility in Coldwater, Michigan, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is incarcerated in violation of his constitutional rights. Petitioner was convicted of three counts of first-degree criminal sexual conduct and was sentenced to 225 months to thirty years imprisonment. He is now challenging his state convictions and sentences on the following grounds: (1) other bad acts evidence and, (2) trial court error in denying him a new trial where newly discovered evidence indicated his actual innocence. For the reasons stated below, the Court denies the petition.

**I. Procedural History**

Petitioner was tried before a jury in the Lenawee County, Michigan, Circuit Court. Subsequently, Petitioner appealed as of right in the Michigan Court of Appeals, alleging the following:

        I.        The trial court erred when under M.R.E. 404(B) it allowed

> evidence of [Petitioner's] prior bad acts that showed a propensity to commit the offenses where the evidence did not show a common scheme, was not relevant to the charged offenses, and the prejudice greatly outweighed the probative value.
>
> > A. The prosecution failed to establish a proper purpose for offering testimony of other instances of sexual conduct that occurred with other individuals not related to the instant case.
> >
> > B. The prior bad acts evidence was not relevant under M.R.E. 401 and M.R.E. 402.
> >
> > C. The Judge's admission of the prior bad acts evidence unfairly prejudiced [Petitioner].
> >
> > D. The inclusion of other bad acts evidence was not harmless error as the prosecution would have been unable to produce the level of evidence required to prove that [Petitioner] committed the charged acts beyond a reasonable doubt, and the jury would have reached a different conclusion.
>
> II. The trial court erred when it denied [Petitioner] a new trial where newly discovered evidence indicated that the complaining witness and his sister perjured themselves at trial.

On September 28, 2004, the Michigan Court of Appeals issued an unpublished *per curiam* opinion denying Petitioner's appeal. *People v. Fields*, No. 249137, 2004 WL 2176893 (Mich.Ct.App. Sept. 28, 2004) (unpublished opinion). Subsequently, Petitioner filed an application for leave to appeal that decision in the Michigan Supreme Court, raising the same claims as raised in the state court of appeals. On June 28, 2005, the Michigan Supreme Court denied leave to appeal. *People v. Fields*, 472 Mich. 938, 698 N.W.2d 394 (2005).

Petitioner filed the pending petition for a writ of habeas corpus on February 17, 2006,

essentially raising the same claims as raised in the Michigan Court of Appeals and the Michigan Supreme Court.

## II. Substantive Facts

This Court adopts the findings of fact as outlined in the Michigan Court of Appeals' decision. Those facts are presumed to be correct under 28. U.S.C. § 2254(e)(1), and are as follows:

> In 1999, [Petitioner] shared a basement bedroom with Jimmy [Philo] in a three-story house. [Petitioner] was forty-two or forty-three years old at the time, and Jimmy, who is "slow" and completed special education, was twenty or twenty-one years old. [Petitioner's] sister moved into the house with her boyfriend and his son, who is the victim in this case. The victim was eighteen[-] years old at the time. Also living in the house were [Petitioner's] mother, [Petitioner's] son, and several other adults. The occupants of the house changed often, and many younger occupants were "slow," had mental problems, or were estranged from their families. [Petitioner] "ran the show," collecting rent from everyone, handling money, and assigning chores. [Petitioner] was a registered nurse and counselor who conducted counseling sessions in his basement office until 1997, when he underwent surgery for rectal cancer. [Petitioner] also received a kidney transplant in 1999.
>
> The victim, who lived in a basement bedroom, has an IQ of 62 and is considered to have mild mental retardation. He functions at the cognitive age of a seven-or eight-year-old. Although he has the normal sexual needs and desires of a man his age, he does not have the maturity and skills that normally accompany these desires. Any decisions that the victim makes concerning sex are based on the skill levels of an eight- to ten-year-old.
>
> At trial, the victim testified that, on two separate occasions, he watched [Petitioner's] pornographic movies with [Petitioner] and Jimmy in [Petitioner's] bedroom. They ate popcorn, drank beer, and smoked marijuana. In the movies, naked men were "puttin' the peters up the butts." Each time they watched the movies, [Petitioner] inserted his penis into the victim's anus and mouth, and put his mouth on the victim's penis. Jimmy and the

> victim also put their mouths on one another's penises. All three
> men ejaculated during these encounters. [Petitioner] did not force
> the victim to participate in these sexual encounters, nor did he
> make any threats. After these encounters, the victim began to have
> nightmares and became afraid of [Petitioner].

*People v. Fields*, No. 249137, 2004 WL 2176893, slip op. at 1.

### III. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this court's habeas corpus review of state court decisions. Specifically, 28 U.S.C. § 2254(d) states in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim–
>
> > (1) resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an
> > unreasonable determination of the facts in light of
> > the evidence presented at the State court
> > proceedings.

28 U.S.C. § 2254(d). Under (d)(1), a federal court may grant a writ of habeas corpus under two different clauses, both of which provide two bases for relief.

Under the "contrary to" clause, a federal court may grant habeas relief if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The words

"contrary to" should be construed to mean "diametrically different, opposite in character or nature, or mutually opposed." *Id.*

Under the "unreasonable application" clause, a federal court may grant habeas relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts. *Williams*, 529 U.S. at 407-08. Relief is also available under this clause if the state court decision either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407; *Arnett v. Jackson*, 393 F.3d 681, 686 (6th Cir. 2005). The proper inquiry for the "unreasonable application" analysis is whether the state court decision was "objectively unreasonable" and not simply erroneous or incorrect. *Williams*, 529 U.S. at 407; *Lordi v. Ishee*, 384 F.3d 189, 195 (6th Cir. 2004).

In analyzing whether a state court decision is "contrary to" or an "unreasonable application" of clearly established Supreme Court precedent, a federal court may only look to the holdings, as opposed to dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003); *Williams*, 529 U.S. at 412.

With that standard in mind, the court proceeds to the merits of the petition for a writ of habeas corpus.

## IV. Analysis

### A. Other Acts Evidence Claim

Petitioner first argues that the trial court abused its discretion in allowing three witnesses to testify about prior acts under M.R.E. 404(b). The Michigan Court of Appeals, the last court to issue a reasoned decision in this case, stated in pertinent part:

> Defendant argues that the trial court abused its discretion in allowing three witnesses to testify about prior acts under MRE 404(b). The decision to admit certain other acts evidence under MRE 404(b) "is within the trial court's discretion and will only be reversed where there has been a clear abuse of discretion." *People v. Crawford*, 458 Mich. 376, 383; 582 NW2d 785 (1998). "An abuse of discretion occurs when an unprejudiced person, considering the facts on which the court acted, would conclude that there was no justification or excuse for the court's ruling." *People v. Taylor*, 252 Mich.App 519, 521; 652 NW2d 526 (2002), citing *People v. Schutte*, 240 Mich.App 713, 715; 613 NW2d 370 (2000). An abuse of discretion involves far more than a difference of opinion, and a trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion. *People v. Hine*, 467 Mich. 242, 250; 650 NW2d 659 (2002).
>
> Whether the trial court abused its discretion by admitting the prior acts evidence is determined by applying MRE 404(b)(1), which provides:
>
>> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.
>
> This Court follows the analytical approach to other acts evidence announced in *People v. VanderVliet*, 444 Mich. 52, 508 NW2d 114 (1992), employing the evidentiary safeguards already present in the rules of evidence.

First, the prosecutor must offer the other acts evidence under something other than a character to conduct or propensity theory. MRE 404(b). Second, the evidence must be relevant under MRE 402, as enforced through MRE 104(b), to an issue of fact of consequence at trial. Third, under MRE 403, a determination must be made whether the danger of undue prejudice substantially outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making [a] decision of this kind under Rule 403. Finally, the trial court, upon request, may provide a limiting instruction under MRE 105. *People v. Sabin, (On Remand)*, 463 Mich. 43, 56; 63; 614 NW2d 888 (2000).

"Evidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *Sabin*, *supra* at 63. "The evidence of uncharged acts needs only to support the inference that the [Petitioner] employed the common plan in committing the charged offense." *Hine*, *supra* at 253. However, relevant evidence must be related to a fact that is of consequence to the action. *Sabin*, *supra* at 57.

In the instant case, the prosecutor offered evidence of [Petitioner's] other homosexual acts with an adolescent, a child, and Jimmy under a theory of common plan or scheme pursuant to MRE 404(b). Jimmy, who was admittedly "slow" and completed "special education," testified that when he was twenty, he had problems with his parents and permanently moved in with [Petitioner]. During the four years that he lived with [Petitioner], Jimmy would regularly help [Petitioner] with his kidney treatments, and engage in oral sex with him afterwards. Jimmy admitted that he viewed pornographic films with [Petitioner] and watched [Petitioner] engage in oral sex with the child, the adolescent, and the victim in this case. Jimmy testified that [Petitioner] did not have difficulty in getting or maintaining an erection, and that [Petitioner] used a penis pump for enlargement purposes only. Jimmy's testimony was properly admitted because it is relevant to the issue of capability and counters the defense of impossibility that [Petitioner] raises in response to the instant allegations. During his closing argument, defense counsel argued that [Petitioner] suffered from erectile dysfunction and was incapable of committing the charged crime. Accordingly, the

-7-

probative value of the evidence is great and substantially outweighs any undue prejudice to [Petitioner].

The adolescent, a neighbor of [Petitioner], testified that he went to [Petitioner's] house regularly after school to hang out, watch TV, and work on the lawn. The adolescent had "difficulty in school," and [Petitioner] was like a "father figure" to him. When he was fifteen, [Petitioner] showed him a film with naked people and then performed oral sex on him. This incident occurred in [Petitioner'] bedroom with Jimmy in the room watching and participating. The adolescent's testimony was relevant because the sexual encounter between him and [Petitioner] took place under the same circumstances and in the same place as the instant offense. Thus, the testimony was probative of [Petitioner's] common pattern of homosexual encounters with troubled or retarded youths.

Finally, the child, who is either [Petitioner's] grandson or step-grandson, testified that he lived with [Petitioner] in his home. Although the record does not contain the child's exact age at the time he lived with [Petitioner], it is apparent that the child was six years old at the time of the 404(b) hearing. He recalled going into [Petitioner's] bedroom one time with Jimmy and watching a "bad movie," in which people touched each other's "front parts" and "back parts." The child stated that while he watched the movie, [Petitioner] touched the bare skin on his "bottom," put a "stick" on his "back part" and put "glue" in his butt. This testimony is relevant because it is sufficiently similar to the charged acts between the victim and [Petitioner]. Indeed, this homosexual episode involving [Petitioner], Jimmy, and the child occurred under the same conditions as did the instant case.

Because [Petitioner] has a history of taking advantage of vulnerable and troubled boys, it becomes more probable that he engaged in oral and anal sex with the victim. The testimony of the adolescent, the child, and Jimmy corroborated the victim's testimony because of the similar circumstances under which the alleged sexual misconduct took place. Their testimony was highly probative of the common scheme that [Petitioner] uses to draw his victims into a sexual relationship. [Petitioner] welcomed the victim into his home, and developed a familial relationship with him. Then he used his position of authority and trust to take advantage of the victim sexually. Just as he did with Jimmy, the adolescent, and the child, [Petitioner] engaged in homosexual acts

> with the victim while watching a pornographic film in his
> bedroom. The trial court did not abuse its discretion because an
> unprejudiced person, considering the facts on which the court
> acted, would find that its decision to admit the evidence was
> justified. *Taylor*, *supra* at 521.

*People v. Fields*, No. 249137, 2004 WL 2176893, slip op. at pp. 2-3.

Concerning Rule 404(b) evidence, the introduction of the evidence *per se* is a matter of state law which may not be reviewed by a habeas court. An issue regarding the admissibility of evidence or error in state procedure does not rise to a level of constitutional magnitude unless it can be viewed as so egregious that the petitioner was denied a fundamentally fair trial. *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir.), *cert. denied*, 125 S.Ct. 126 (2004). To determine whether the admission or inadmissibility of evidence has denied a defendant's fundamental due process rights, the court should consider the extent to which the evidence is "critical" to the case, whether it "tend[s] to exculpate" the accused, and whether the evidence bears "persuasive assurances of trustworthiness." *Clark v. O'Dea*, 257 F.3d 498, 503 (6th Cir. 2001).

The Sixth Circuit has specifically upheld state convictions against similar habeas challenges involving Rule 404(b) evidence on the ground that the use of such evidence in those cases was not fundamentally unfair. *See Burton v. Renico*, 391 F.3d 764, 773-775 (6th Cir. 2004); *Coleman v. Mitchell*, 244 F.3d 533, 542-543 (6th Cir. 2001). The same conclusion is warranted in this instance.

The Michigan Court of Appeals, in reviewing Petitioner's claim for plain error held that, because Petitioner was in a position of authority and had a history of taking advantage of vulnerable and troubled boys, the evidence was highly probative of the common scheme that he

uses to draw his victims into a sexual relationship, and therefore, "[t]he trial court did not abuse its discretion because an unprejudiced person, considering the facts on which the court acted, would find that its decision to admit the evidence was justified." *People v. Fields*, No. 249137, 2004 WL 2176893, slip op. at p. 3.

Against that backdrop, the Michigan Court of Appeals' holding as to the introduction of the 404(b) evidence was not contrary to, or an unreasonable application of, clearly established federal law so as to entitle Petitioner to habeas relief. As such, Petitioner is not entitled to habeas relief on this claim.

### B. Newly Discovered Evidence Claim

Petitioner next contends that the state courts' refusal to set aside his conviction on his newly discovered evidence claim denied him due process of law. Petitioner has not presented any new evidence, such as affidavits, to support this claim.

"Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution–not to correct errors of fact." *Id.* A claim that a habeas petitioner is entitled to relief based upon the failure of a state trial judge to grant him a new trial on the basis of newly discovered evidence is not cognizable in a habeas proceeding. *See Monroe v. Smith*, 197 F.Supp.2d 753, 763 (E.D. Mich. 2001). Thus, Petitioner's claim that he has newly discovered evidence does not state a claim upon which habeas relief can be granted. *See Johnson v. Hofbauer*, 159 F.Supp.2d 582, 606 (E.D. Mich. 2001).

Federal courts which have suggested that habeas relief could conceivably be granted upon newly discovered evidence have set an extraordinary showing of a petitioner's innocence before relief could be granted. *See Dell v. Straub*, 194 F.Supp.2d 629, 657 (E.D. Mich. 2002); *Johnson*, *supra* at 606. Even on direct appeal, motions for a new trial based upon newly discovered evidence "are disfavored and should be granted with caution." *Monroe*, *supra* at 763 (quoting *United States v. Turns*, 198 F.3d 584, 586 (6th Cir. 2000)). When a defendant in federal court makes a motion for a new trial based upon newly discovered evidence, a defendant must show: (1) the evidence was discovered after trial; (2) the evidence could not have been discovered earlier with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would likely produce an acquittal if the case were retried. *Turns*, 198 F.3d at 586-587. Petitioner has not met this standard.

This Court finds that the record supports the trial court's determination. Petitioner presents no reason or grounds that would be an exception to the rule, and the facts of this case defy any possibility that Petitioner is innocent of the crime.

Because the state court adjudications were neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent, or an unreasonable determination of the facts, Petitioner is denied habeas relief on this claim.

## V. Conclusion

For the reasons stated above, this Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented in his petition.

Accordingly:

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: May 23, 2008

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 23, 2008, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager